# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR417-251 |
| | ) | |
| SHAWN SIBERT, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

On February 14, 2018, the Court held an evidentiary hearing on defendant's motion to suppress a firearm discovered during a warrantless search of his vehicle after he was lawfully stopped and arrested for various traffic violations. That search, the government contends, was a proper "inventory search" conducted pursuant to established police department policy designed to safeguard any property contained within the vehicle and to protect the police from claims of property loss or potential danger. Au contraire, says the defendant -- the real purpose of the search was to check the car for evidence of a crime. Only when a pistol was found under the driver's seat did the officers decide to impound the vehicle. Absent the discovery of that firearm, he argues, the officers would have allowed the car to be parked at the curb next to the home of the defendant's grandmother.

After further consideration of the evidence and the arguments of counsel, the Court has decided to reopen the suppression hearing. The reasons for that decision are explained in this Order.

An assessment of the reasonableness of police conduct under the Fourth Amendment involves "'*predominantly* an objective inquiry.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (emphasis added) (citation omitted). Indeed, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996) (a traffic stop based on probable cause is constitutionally reasonable even if the officer had an "ulterior motive" for the stop). An officer's "actual motivations" *do matter*, however, in the limited category of searches that are permissible even in the absence of probable cause. *Id.*; *al-Kidd*, 563 U.S. at 736. Inventory searches, which are justified as a protective measure whenever the police take custody of a motor vehicle, are one instance where the police must have a pure motive for their otherwise objectively reasonable conduct. *Whren*, 517 U.S. at 811. Thus, inventory searches (like administrative searches conducted in the absence of probable cause) "must not be a ruse for a general rummaging in order to discover incriminating evidence." *Id.*

(quotes and cite omitted). Even if the police have the discretionary power to take protective custody of, and hence inventory, a particular motor vehicle, they violate the Constitution if they act "'in bad faith or for the sole purpose of investigation.'" *Id.* (quoting *Colorado v. Bertine*, 479 U.S. 367, 372 (1987)).

It is apparent from the officer bodycam videos tendered by the government, and from Officer Joseph Overholt's testimony at the hearing, that Overholt was not *himself* inclined to search the vehicle defendant was driving. Instead of exercising his discretion to impound the vehicle, he spent considerable effort endeavoring to arrange for the vehicle to be moved from the street, where it was blocking traffic, and parked at the curb, and he did this in order to spare the defendant (or the vehicle's owner, who was not present), the costly tow and storage fees.[1] Officer Overholt abandoned this plan only after his on-scene sergeant commented, "Y'all gonna look through this first?" Video 20, file-2 ("Overholt Bodycam") at 16:30-35. The officer interpreted his sergeant's comment as meaning "that an inventory search must be

---

[1] Officer Overholt had even enlisted the services of a neighbor and friend of defendant's family to park the vehicle, confirmed that she had a valid license, and furnished her with the car keys. The defendant expressed his assent to this plan.

3

made," thus leaving him with one option -- impoundment. It is clear to the Court that Overholt treated his sergeant's comment as a directive, not a mere suggestion. Thus, it was the sergeant, not Overholt, who made the call to search the vehicle "first."[2] As the sergeant was the decisionmaker, it is his actual motivations that become important to the Court's analysis.

Officer Overholt testified that when his sergeant "said go through the vehicle, I *assumed* he was referring to an inventory search and knew that a tow must be made." Suppression hearing transcript at 32 (emphasis added). The officer, however, disavowed any knowledge of his sergeant's actual motivations for wanting the vehicle searched "first," nor did he know what the sergeant intended to come "second" to that search. *Id.* at 33 ("I can't assume what he meant."). Further, when asked why his sergeant would have stood by and allowed him to waste his time arranging to have the car moved to the curb (where it could be left legally parked) if the sergeant's real intention was to impound and tow that vehicle, Officer Overholt admitted that he could furnish no

---

[2] Indeed, Overholt conceded that, but for his sergeant's comment, he would have allowed the car to be moved a few feet to the curb and would *not* have searched it.

4

answer to that question. *Id.*

As the evidence now stands, the Court is unable to determine what motivated Overholt's supervisor to direct his subordinate officer to conduct a search of the vehicle. The record certainly does not *establish* that the sergeant had a "bad" motive -- *i.e.*, that his sole purpose was to conduct an investigative search for contraband or other evidence of a crime and, if nothing turned up, then allow the car to be left legally parked just as Overholt initially intended. But neither does the existing record eliminate that possibility.

Where, as here, the driver of a vehicle is arrested and the owner is not available, the Savannah police have the "discretion" either to (1) impound the vehicle "for safekeeping" or (2) leave it "legally parked at the request of the driver." Doc. 37-2 at 5 (SCMPD impoundment policy § VI.A.) Only if the police elect to impound the vehicle are they permitted by the policy to inventory it. *Id.* at 8 (§ XI).[3] The police simply do not have the option -- either under their policy or under the Constitution -- to conduct a suspicionless search of a vehicle *first* and

---

[3] While the government is correct that the police had technical "custody" of the vehicle from the moment they arrested its driver, they did not assume "protective custody" of that vehicle within the meaning of their written policy, or have a concomitant right to inventory its contents, until they elected to have it towed and impounded.

then decide whether to impound it. Where a suspicionless search is allowed under the Constitution because a special purpose (such as a protective inventory) is being served, the "actual motivations" of the police become critical, for the exemption from the probable cause requirement does not obtain if the search is *not* made for that special purpose. *Whren*, 517 U.S. at 811-12; *al-Kidd*, 563 U.S. at 736-37. It therefore becomes necessary for the Court to assess the actual motivation of the police official who made the call to search defendant's vehicle -- Overholt's supervising sergeant.[4]

For these reasons the Court is reopening the suppression hearing. At that hearing the government shall offer evidence as to the sergeant's actual motivation for directing that the defendant's vehicle be searched.

**SO ORDERED,** this 1st day of March, 2018.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[4] The fact that Overholt himself followed police department policy to the letter once that search decision was made does not eliminate the need to plumb the subjective intentions of the actual decisionmaker.